RECEIVED
OCT 0 5 2015
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Claire J. Lee,

       Plaintiff,

Vs.

Regions Hospital, Health Partners Inc. and
Park Nicollet Clinics,

       Defendants.

COMPLAINT

Case No. 15cv3801 JRT/JSM

JURY TRIAL DEMANDED

## I. INTRODUCTION

This case is brought under the Emergency Treatment and Active Labor Act (EMTALA) of 1986, the Minnesota Government Data Practices Act (MGDPA), the Medical Records Act and the Minnesota and Federal Patients' Bill of Rights, etc. wherein Plaintiff has suffered severe damages, including severe emotional distress. Plaintiff is a mentally disabled vulnerable adult and had a psychiatric/medical emergency and went to Regions Hospital (Regions) for examination, treatment and stabilization for her emergency medical condition (EMC) and instead of providing her with an appropriate medical screening exam, treatment and stabilization that is required under the law, they threw her out and ejected her from the building, with full knowledge that she was a mentally disabled vulnerable adult and would likely suffer great harm or even death and Defendants showed deliberate indifference to Plaintiff's serious medical needs. Regions also acted with malice and retaliation in that they were angry that Plaintiff was asserting her rights under the law to treatment and stabilization and to her rights under the Patients' Bill of Rights to receive this notice and to complain about Regions' illegal and unfavorable treatment of her, her rights to use the phone and to contact her doctor and health clinic. Plaintiff was doing nothing more than asserting her rights to treatment and stabilization out of absolute



necessity for her emergency medical condition and Regions called security and threw her out and denied her treatment and stabilization as retaliation and punishment for her asserting her rights, including the right not to submit to transfer. Plaintiff has suffered additional damages by the Defendants' illegal release of her private medical information, without her consent, for purely self-serving reasons and Regions illegally prevented Plaintiff from speaking with the on-call clinician at her clinic.

## II. PARTIES

1. Plaintiff Claire Lee resides in Hennepin County at 7610 Penn Avenue South, Apt. 226, Richfield, MN 55423.
2. Plaintiff is a person with severe and persistent mental illness. Plaintiff's mental health disability materially limits her daily activities in the areas of interacting with others, thinking, ability to care for herself, working and other major life activities.
3. Defendants Regions Hospital and HealthPartners, Inc. receive funding through both the State and Federal government and participate in the Medicare and Medicaid system. Regions Hospital is located at 640 Jackson Street, St. Paul, MN 55101 and HealthPartners, Inc. is located at 8710 33rd Avenue South, Bloomington, MN 55425. Park Nicollet Clinic is located at 3800 Park Nicollet Boulevard, St. Louis Park, MN 55416.
4. Upon information and belief, all individual managers and employees involved in the incident giving rise to this lawsuit, have been acting with actual authority from Defendants and as agents of Defendants at all times relevant to this complaint.

## III. JURISDICTION AND VENUE

5. Federal question jurisdiction for this matter is conferred by the Emergency Medical Treatment and Labor Act (EMTALA) of 1986, 42 U.S.C. §1395dd and Condition of Participation, Patients Rights 42 CFR §482.13, the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. §13.384, and the Medical Records Act, Minn. Stat. §144.335.

6. Venue is proper in Minnesota because the claims arose in Minnesota, Plaintiff resides in Minnesota and Defendants are doing business and providing services in Minnesota.

## IV. FACTS

7. On October 6, 2013, Plaintiff went to the emergency room at Regions Hospital because she was depressed and suicidal and was having a psychiatric/medical emergency and she asked for help, exam and treatment for this. Plaintiff is a mentally disabled vulnerable adult and desperately needed emergency medical services and an evaluation, treatment and stabilization for her emergency medical condition (EMC).

8. When Plaintiff got there she informed the triage nurse that she was depressed and suicidal and was taken back to the psychiatric area of the emergency department (ED).

9. Plaintiff was assigned a room and a social worker came in to speak with her. One of the first statements that she sarcastically made to Plaintiff was the comment "what are you doing east of the river?" and she followed up by stating that Plaintiff should be using hospitals in the Minneapolis area. Plaintiff replied with an explanation, but also stated that she should be able to go to any hospital for care. The social worker then asked Plaintiff about her presenting problems, current symptoms and was given a very cursory and limited psychiatric exam. However, it was determined that Plaintiff was very depressed and suicidal. The social worker left the room and then came back in and told Plaintiff that they would like to transfer Plaintiff to Nancy Page, a residential crisis program, and that they were working on a transfer. Plaintiff informed the social worker that she didn't want to go to Nancy Page and didn't feel safe going there, considering the severity of her condition and because it was not a locked facility. The social worker demonstrated to Plaintiff that she was not happy that Plaintiff declined the transfer.

10. A little while later, a nurse came in and spoke with Plaintiff. She also asked Plaintiff "what are you doing east of the river" and asked Plaintiff why she was at Regions when she could have gone to a hospital in Hennepin County. Plaintiff again explained to her the reasons and this nurse stated that "we only see patients in Ramsey County out to the Western Wisconsin area". This grilling and incompassionate care further depressed Plaintiff and was making Plaintiff upset. She asked Plaintiff some questions and again stated that they wanted to transfer Plaintiff to Nancy Page. She stated that there were no open inpatient psychiatric beds at Regions and Plaintiff told her that she would be

willing to wait until one opened up. Plaintiff, once again, explained that she was very sick and didn't feel comfortable or safe going to Nancy Page, given that they were an unlocked facility and she was very suicidal. This nurse was also angry.

11. When Plaintiff went out and asked for simple things or asked questions, she was ignored by the entire staff or given sarcastic answers. No one offered any help or anything to Plaintiff, except to transfer her. Plaintiff asked several times if she could use the phone and she was given the answer that they wouldn't allow her to use the phone in the psychiatric unit, but she could use one outside of the unit at the hospital, but only if she would consent to discharge herself. It was clear to Plaintiff at the time, that they were doing everything they could to make Plaintiff's stay there miserable, so that Plaintiff would leave, because they didn't want to provide her care due in part because she was on Medicare and Medical Assistance and they would not be compensated enough.

12. Plaintiff was lying on the bed in her room resting (but fully awake), when someone opened the door and turned on the light. A man who identified himself as a doctor from the ED, sarcastically told Plaintiff that she was not going to be admitted at Regions and that she "would be gone in the morning" and he walked out of the room. He made no attempt to examine Plaintiff or inquire how she was doing. This upset Plaintiff.

13. Plaintiff then asked to use the phone again to call her doctor, because she was now very panicked and anxious, in addition to being even more depressed than when she got there. When the staff saw that Plaintiff was going to use the phone, they turned the phone off, so that Plaintiff couldn't use it. Plaintiff told them about what the doctor had just told her and that she was very upset by what had just happened to her and that she needed to call her doctor or at least the answering service to tell them how serious this was. At least 3 staff members who were very young (the staff had changed now because it was the next shift), told Plaintiff to go out in the hall outside of the unit and use the phone and then she would be discharged. They told Plaintiff they would be very glad to let her out into the hallway, but that she could not use the phone on the unit – they invited Plaintiff many times to discharge herself. Plaintiff didn't want to be discharged due to her very serious medical condition and because she was scared to be by herself. Plaintiff begged to use the phone to speak with a clinician at her clinic, because she was scared that she might be discharged and sent out to kill herself and she didn't feel safe and she desperately needed medical attention.

14. Plaintiff then asked for a copy of the patients' bill of rights, because she didn't have a copy and was never given one upon her arrival to the ED or in the psychiatric area, and then Plaintiff was told to go to her room and stay there. When Plaintiff got to her room and saw that they had given her the privacy notice instead, Plaintiff walked out of her room and told them she was given the wrong brochure – that she needed the patients' bill of rights.

15. The night nurse that kept telling Plaintiff to discharge herself, then said to Plaintiff "that's it, you're discharged – go back to your room". Plaintiff went back to her room and a couple minutes later this nurse and 2 security guards threw Plaintiff's belongings at her and on the bed and didn't give her all of her belongings. Plaintiff stated that she didn't want to be discharged and that they were violating EMTALA by doing this. Plaintiff stated that she wasn't in any condition to be discharged and was still suicidal.

16. The nurse and security guards escorted Plaintiff out of the psychiatric part of the Hospital and this nurse showed Plaintiff where she could make the call she needed to, so Plaintiff had permission to make this call. Plaintiff walked over to the receptionist for the ED and stated that she had just been discharged and was suicidal and desperately needed treatment and could she go back through the ED and be seen by someone else. The receptionist didn't know, so she proceeded to call the psychiatric department, even though Plaintiff asked her not to. Plaintiff asked both her and the police officer who was stationed there, for assistance in getting a call back number, because there was no phone number on the phones in the lobby. Plaintiff was having a lot of trouble getting help regarding this, but finally the receptionist gave Plaintiff the number on the phone at her desk.

17. Plaintiff then proceeded to call Park Nicollet's answering service, in hopes that they could contact her psychiatrist, who works for Park Nicollet. Plaintiff was very upset and panicked about what to do and in disbelief over what had just happened. Plaintiff desperately needed to speak to a clinician about what to do and needed help and medical care. The answering service said they would contact the on-call clinician and they would call back on the number Plaintiff gave them. Plaintiff waited at least 20-30 minutes for a call back. Plaintiff walked over to the phone and called the on-call service a couple more times, because now 2 staff members from the Psychiatric area, including the nurse who illegally discharged Plaintiff, had come out and were seated at the

reception desk, apparently to wait for and intercept the call from Plaintiff's on-call clinician and Plaintiff was scared that they would do something to her.

18. Plaintiff told the nurse at least 3 times that she did not have her permission to speak to the on-call clinician from her clinic regarding her and that she should tell her when the clinician called and allow Plaintiff to speak directly with the clinician. Plaintiff was seated quietly and not causing any disturbance, but was alarmed that it was taking so long. The phone rang and Plaintiff asked a couple of times if it was for her and they wouldn't tell her. Plaintiff was seated, so she couldn't hear the conversation and didn't feel comfortable going up to the desk to see. However, after the call ended, Plaintiff asked if that was the clinician and the nurse said yes, but wouldn't say anything about what was going on or what was said. Plaintiff told the nurse that she didn't have any permission to speak to the clinician and that the call was for Plaintiff, not her. She just ignored Plaintiff and said to Plaintiff that she needed to leave.

19. Plaintiff then went back to the phones and called 911 to see if she could get some help that way. Plaintiff told them that she desperately needed help and Plaintiff thought they could either send police or an ambulance, to make sure that Plaintiff was safe and was able to get access to appropriate medical care and/or hospitalization. The 911 operator told Plaintiff that she was already at a hospital and she wouldn't send anyone and the operator then wanted only to speak to hospital personnel. The same nurse who illegally intercepted Plaintiff's call to her clinician, then came to the phone and spoke to the 911 operator and told them not to come.

20. Plaintiff then tried to call the answering service back on the lobby phones and the same nurse and 2 security guards came and told Plaintiff she had to leave and gave her a trespass notice. They then escorted Plaintiff to the parking ramp and to her car.

21. Plaintiff was in shock, sobbing and extremely distraught at what had happened for the entire encounter at Regions. Plaintiff then had to drive home in an extremely despondent state and got the urge to crash her car a few times and almost did and wasn't even paying attention to her driving.

22. When Plaintiff got home, she immediately called the answering service and this time, they had a physician call her almost immediately (the other clinician was a psychologist that spoke to Regions' nurse). Plaintiff relayed her suicidal state and Plaintiff was

sobbing on the phone and the Physician told Plaintiff that she needed to call 911 and be immediately taken to another hospital.

23. Plaintiff called 911 in an agitated state and said that she was suicidal and Plaintiff waited for an ambulance in front of her apartment building. Instead, 2 police squad cars pulled up slowly with their lights off and they opened their doors and stayed behind their doors and Plaintiff was treated as though she was a criminal. This further upset, traumatized and scared Plaintiff. Plaintiff was ordered to throw her purse away from her and put up her hands. They put Plaintiff in the back seat of a squad car and took her to another hospital.

24. Plaintiff has never been in the back of a squad car or arrested. The entire experience at Regions and with the police traumatized Plaintiff. Plaintiff spent more than a week at another hospital. Plaintiff's emergency medical condition was further exacerbated and made worse by Regions' illegal treatment of her. But for Regions' illegal treatment of Plaintiff, she wouldn't have been subjected to further traumatization by the police actions towards her.

25. Plaintiff had not been acting in a disruptive, threatening or boisterous manner to justify any of the illegal treatment she was subjected to – she was in a psychiatric crisis with a life-threatening emergency and was panicked, because they kept telling her to discharge herself and they wouldn't fully examine, treat or stabilize her. At no time did Plaintiff refuse any part of any medical examination, treatment or stabilization – at all times, she was asking for treatment. Plaintiff was never informed of any risks of refusing an exam, treatment or transfer and she was never presented with any form to sign, agreeing to waive her right to exam, treatment or transfer. At no time did Plaintiff ask to leave the hospital, but she wanted to wait instead to see if a hospital bed would open up.

26. Plaintiff was stunned and felt hopeless and even more depressed because of this illegal and hideous treatment. Not only didn't anyone care that she was suicidal, but when she asked for treatment and stabilization, she was thrown out and they knew they were throwing out a suicidal, vulnerable adult. This was heinous, cruel, inhumane and illegal.

27. Plaintiff never received an appropriate, non-disparate medical screening exam for her emergency medical condition, never received any treatment or stabilization for her emergency medical/mental health condition and never was transferred to another hospital for an exam or stabilization. Regions threw Plaintiff out of the hospital out of

retaliation, out of their desire to dump and transfer Plaintiff back to Hennepin County and because she refused to go to Nancy Page, among other non-legitimate reasons. They showed deliberate indifference to her life-threatening medical/psychiatric condition, because they knew she needed to be hospitalized and they instead wanted to transfer ("dump") her to a facility that didn't come close to meeting her medical needs and that she refused to go to. Instead of placing Plaintiff on a 72 hour hold, they kept telling Plaintiff to discharge herself.

28. Plaintiff didn't do anything wrong to justify any of this illegal treatment and desperately needed medical care. If Regions didn't want to treat Plaintiff, they had a duty under the law to transfer her to another medically appropriate facility for treatment and not maliciously throw her out, so that she was in extreme danger of harming herself. Instead, they issued her a no-trespass warning for no legitimate reason, when all Plaintiff wanted was appropriate medical care for her emergency medical condition.

29. Plaintiff was then forced to drive home in an unsafe and unstable medical/mental health condition. Plaintiff cried all the way home and was very close to deliberately crashing her car. Plaintiff was in desperate need of medical care.

30. Plaintiff is forever damaged by this emotionally and physically and is now scared to get help when she is in a crisis or suicidal.

31. Defendants have also improperly and illegally violated Plaintiff's rights when they shared medical information clearly without Plaintiff's consent or authorization when a nurse at Regions intercepted Plaintiff's private phone call to her clinic's on-call clinician. Plaintiff had been discharged by Regions so she was no longer a patient, so Regions had no right to speak to anyone regarding her private medical information. Park Nicollet's on-call psychologist had no right to speak to Regions' personnel without Plaintiff's permission. Plaintiff initiated the call and the clinician was supposed to only speak to Plaintiff.

32. Plaintiff called the patient representative's office at Regions a day or so after she was discharged from the hospital that admitted her and she spoke with a patient representative, who was filling in temporarily until they hired a new patient representative, and she complained about her illegal and disparate treatment at Regions at length and in detail, and Plaintiff has never received a response from any patient representative or other person at Regions. Plaintiff sent Regions two letters

dated November 5, 2013 and spoke about the illegal treatment and still Plaintiff has never received any response of any kind from Regions.

## V. CLAIMS

### Count I
### Violation of The Emergency Medical Treatment and Active Labor Act (EMTALA)
### 42 U.S.C. §1395dd

33. Regions refused Plaintiff emergency medical treatment, including but not limited to, an appropriate and non-disparate medical screening exam, treatment and stabilization (Plaintiff received no treatment or stabilization). Regions did not finish the mental health screening, do any medical screening necessary to establish whether or not Plaintiff's condition was from a psychiatric disturbance or a medical condition and whether or not Plaintiff was stable medically, Plaintiff was not allowed to be examined by a medical doctor, she never received any treatment or medication and Plaintiff didn't receive care according to the hospital's own protocol. Other suicidal patients would have been hospitalized and/or put on a 72 hour hold, so Plaintiff received disparate treatment regarding this and regarding other things. Plaintiff also received disparate treatment when Defendants continually demanded that Plaintiff transfer to Nancy Page and attempted to "dump" Plaintiff and when they claimed that they had no bed for her and refused to allow her access to the phone to speak to her own physician and/or on-call clinician, among other things. Regions also retaliated against Plaintiff when they threw her out of the psychiatry department when all Plaintiff did was ask to use a phone to speak to the on-call doctor and requested a patient bill of rights, among other things. Regions showed deliberate indifference and malice when they refused her treatment and threw her out of the building and issued a no-trespass warning with full knowledge that she was a mentally disabled, vulnerable adult who was suicidal and had a life-threatening medical emergency and they knew she wasn't doing anything wrong and was only trying to get the medical care that she needed. The hospital personnel were just trying to cover their illegal treatment, by their actions of intercepting Plaintiff's two phone calls, by their actions of throwing Plaintiff out and trespassing her for no legitimate purpose and by fabricating the hospital records in violation of the law. Defendants were plainly put on notice of the danger to Plaintiff and chose to ignore the

danger notwithstanding the notice and there was sufficient time for reflection of their illegal actions and even then, they didn't care.

34. Defendants engaged in illegal conduct against C.L. in violation of 42 U.S.C. §1395dd and C.L. has suffered injury as a result.

## Count II
### Violation of the Minnesota Government Data Practices Act (MGDPA)
### Minn. Stat. §13.384

35. Defendants have violated C.L's privacy in that they illegally and deliberately shared Plaintiff's medical information after she was discharged and no longer was a patient without any consent from Plaintiff and for purely self-serving reasons in that Regions intercepted Plaintiff's private phone call, so that she couldn't get any help or relay to anyone the problems she was having at Regions getting medical attention. In addition, the psychologist from Park Nicollet had no consent from Plaintiff to speak to Regions and Regions refused to allow Plaintiff to speak to the on-call physician, among other things.

36. Regions also violated federal and state law (unknown statute at this time) by fabricating medical records to make it appear that Plaintiff was uncooperative and have fabricated that Plaintiff wanted to be discharged and fabricated that Plaintiff was no longer suicidal and that Plaintiff gave her consent to speak to the on-call doctor, among other things.

37. Defendants have and are engaging in illegal conduct against Plaintiff in violation of Minn. Stat. §13.384 and C.L. has suffered injury as a result.

## Count III
### Violation of the Medical Records Act
### Minn. Stat. Chapter 144

38. Defendants have violated Plaintiff's privacy in that they illegally and deliberately shared medical information without Plaintiff's consent and for purely self-serving reasons, among other things.

39. Defendants have and are engaging in illegal conduct against Plaintiff in violation of Minn. Stat. Chapter 144 and Plaintiff has suffered injury as a result.

### Count IV
### Violation of Plaintiff's Rights Under the Patient Bills of Rights
### 42 CFR §482.13
### Minnesota Law

40. Regions has refused to respond at all to Plaintiff's complaints of her illegal treatment at this hospital, despite Plaintiff's detailed verbal complaint to the patient representative's office in October, 2013 and subsequent letters on November 5, 2013.
41. Regions has violated this statute and are engaging in illegal conduct against Plaintiff in violation of 42 CFR §482.13 and Minnesota law and Plaintiff has suffered injury as a result.

### Court V
### Intentional Infliction of Emotional Distress

42. In refusing Plaintiff services, appropriate medical screening exam, treatment, stabilization and appropriate transfer for her emergency suicidal medical condition that she had a right to under the law with full knowledge that C.L. suffers from serious and persistent mental illness, is a vulnerable adult and has a history of suicide attempts and refusing her services in the bad faith manner in which they did over and over again and by other bad faith motives, including but not limited to, maliciously throwing her out of the psychiatric unit and hospital with full knowledge that she would likely kill or harm herself and in showing deliberate indifference to her and callous disregard for her rights under the law, among other things, Regions has engaged in extreme, outrageous, callous and deliberate conduct that violates any standard of reasonable care and that no ordinary person would be able to withstand. In intercepting the private phone call with Plaintiff's clinic and refusing Plaintiff phone access earlier and discussing her medical information with the on-call clinician, without Plaintiff's knowledge or consent, Regions has engaged in illegal, extreme, outrageous, callous and deliberate conduct.
43. The Defendants' conduct has been intentional, malicious, deliberately indifferent and reckless.
44. As a result of Defendants' conduct, Plaintiff has suffered extreme emotional distress, harm and injury.

## VI. RELIEF

WHEREFORE, pursuant to the above enumerated statutes, Plaintiff requests that this Court grant relief, including but not limited to, the following:

A. Declaring that the Defendants' actions have violated EMTALA, the Minnesota Government Data Practices Act, the Medical Records Act and both Federal and State Patient's Rights;

B. An injunction preventing Regions from dumping and refusing to treat all emergency patients, but specifically emergency psychiatric patients;

C. Awarding Plaintiff appropriate compensatory, punitive and statutory damages for all her claims and other claims, including those enumerated above;

D. Awarding to Plaintiff her reasonable costs and attorney's fees; and

E. Such other relief as the court determines to be just and reasonable.

Dated: 5 Oct 2015

Claire J. Lee
7610 Penn Avenue South
Apartment 226
Richfield, MN 55423
(612)861-8058