## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Claire J. Lee, | Case No. 0:15-cv-03801-JRT-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Regions Hospital, Health Partners, Inc., and Park Nicollet Clinics, | |
| Defendants. | |

Claire Jean Lee, 10101 Lyndale Avenue South, Apartment 219, Bloomington, MN 55420

Carolin J. Nearing, Larson King, LLP, counsel for defendants

The plaintiff, Claire Lee, drove herself to Regions Hospital on October 6, 2013, complaining of depression, thoughts of self-harm, and other mental health concerns. [Am. Compl., ECF No. 3, ¶ 7.] Ms. Lee brings this lawsuit under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (EMTALA), claiming that the staff at Regions Hospital refused to provide her with adequate treatment. [Am. Compl. ¶ 38.] She alleges violations of other state statutes and a federal regulation as well, including the Minnesota Government Data Practices Act, the Minnesota Health Records Act, and the federal and state Patient Bill of Rights. [*Id.* ¶¶ 41-49.] Ms. Lee also brings a tort claim alleging intentional infliction of emotional distress under state law arising out of the same incidents. [*Id.* ¶¶ 50-53.]

This matter is now before the Court on the Defendants' motion for summary judgment. [Defs.' Mot., ECF No. 30.] Defendants argue that their staff members' actions during Ms. Lee's visit to Regions Hospital did not violate EMTALA; that they are not subject to liability under the Minnesota Government Data Practices Act; that they did not violate the Minnesota Health Records Act; that Ms. Lee is not entitled to

1

sue under the federal or state Patient Bill of Rights; and that Ms. Lee has failed to state a claim for intentional infliction of emotional distress. [Defs.' Mem., ECF No. 31.] The Defendants submitted several affidavits and exhibits in support of their summary-judgment motion. [*See* ECF Nos. 33-43.]

Ms. Lee requested an extension of the deadline for her response to Defendants' motion for summary judgment, which was granted on October 4, 2017. The deadline for her response was extended until November 2, 2017. [Order, ECF No. 50.] To date, Ms. Lee has failed to submit any response to Defendants' motion for summary judgment. For the reasons set forth below, the Court recommends that the Defendants' motion for summary judgment be granted.

## I. The Summary Judgment Standard

Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322. When the moving party properly supports a motion for summary judgment, the nonmoving party must present admissible evidence showing that specific facts exist that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## II. Analysis

As noted above, in her Amended Complaint, Ms. Lee asserts claims under the Emergency Medical Treatment and Active Labor Act (EMTALA), the Minnesota Government Data Practices Act, the Minnesota Health Records Act, and the federal or state Patient Bill of Rights. She also asserts a common law claim for intentional infliction of emotional distress. The Court addresses each of these claims below.

### A. Emergency Medical Treatment and Active Labor Act Claim

EMTALA imposes two requirements on hospitals with emergency departments—to screen and stabilize patients. 42 U.S.C. § 1395dd(a)-(b). To sustain an EMTALA screening claim, a plaintiff must show:

> (1) defendant has both a Medicare provider agreement with the Secretary of Health and Human Services and an emergency room or emergency department; (2) plaintiff went to the defendant's emergency room or emergency department; (3) plaintiff requested examination or treatment; (4) plaintiff had an emergency medical condition; (5) defendant did not provide plaintiff with an appropriate medical screening examination; and (6) as a direct result of the conduct of defendant, plaintiff suffered personal harm.

*Hunt ex rel. Hunt v. Lincoln County Mem'l Hosp.*, 317 F.3d 891, 893 n.4 (8th Cir. 2003) (quoting *Hunt v. Lincoln County Mem'l Hosp.*, No. 4:00-cv-982, 2001 WL 34062320 (E.D. Mo. Nov. 29, 2001)). For a stabilization claim, a plaintiff must show: (1) defendant had actual knowledge of the individual's unstabilized emergency medical condition; and (2) defendant did not provide further medical examination and treatment required to stabilize the medical condition or failed to transfer the plaintiff to another medical facility. *See Summers v. Baptist Medical Center Arkadelphia*, 91 F.3d 1132, 1140 (8th Cir. 1996). A plaintiff may sue for violation of either or both requirements. 42 U.S.C. § 1395dd(d)(2)(A).

### 1. Screening Requirement

Ms. Lee claims that, upon arriving at Regions Hospital, she was "given a very cursory and limited psychiatric exam" by the first person to assess her, and generally asserts that other examinations either did not occur or were inadequate or inappropriate. [Am. Compl., ¶¶ 9-10, 12, 15.] EMTALA provides that if an individual requests an examination or treatment from a hospital's emergency department, the hospital "must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). The Eighth Circuit has held this language to mean that the plaintiff must show a "lack of uniform treatment." *Summers*, 91 F.3d at 1138. That is, "[i]t is up to the hospital itself to determine what its screening procedures will be. Having done so, it must apply them alike to all patients." *Id.*; *accord Hunt* 317 F.3d at 894.

As stated above, Ms. Lee has come forward with no evidence to support her allegations. The Defendants, in contrast, provided unrebutted evidence demonstrating that their staff not only screened and examined Ms. Lee on more than one occasion on the day in question, but that they did so in a non-disparate way and in full

3

compliance with their procedures. [*See* Stepan Aff., ECF No. 42, ¶¶ 2-5 (describing the hospital's screening procedures and the compliance therewith of the screening done with respect to Ms. Lee); Isenberger Aff., ECF No. 40, ¶¶ 6-9, 11.] In the absence of any evidence in the record to contradict the Defendants' showing, the Court concludes that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law with respect to Ms. Lee's EMTALA screening claim.

### 2. Stabilization Requirement

If the required screening shows signs of any emergency medical condition, EMTALA requires that the hospital must either stabilize the condition or transfer the individual to another medical facility for stabilization. 42 U.S.C. § 1395dd(b)(1). Ms. Lee alleges that the hospital staff determined that she had an emergency medical condition. [Am. Compl., ¶¶ 9, 15, 21.] Defendants argue that, while Ms. Lee was experiencing symptoms associated with diagnosed mental health conditions, she was not suffering from an emergency medical condition requiring stabilization under EMTALA. [Defs.' Mem. at 6, 9.]

In support of their position, Defendants submitted: Ms. Lee's medical records from her visit to Regions Hospital on October 6, 2013; Ms. Lee's discharge instructions from the next day; and the affidavits of the physician and physician's assistant who were responsible for assessing and diagnosing Ms. Lee. *See* Nearing Aff., ECF No. 34, Ex. A, B & C; Isenberger Aff.; Stepan Aff..] This evidence shows that Defendants determined that Ms. Lee was not suffering from an emergency medical condition, and Ms. Lee provided no evidence to demonstrate a genuine fact issue for trial. As a result, Defendants are entitled to summary judgment on Ms. Lee's EMTALA stabilization claim.

### B. Minnesota Government Data Practices Act Claim

Ms. Lee alleges that the Defendants mishandled or unlawfully disclosed information from her medical records in violation of the MGDPA and fabricated medical records to make it appear as though she was uncooperative during the events described in her pleadings. [Am. Compl. ¶¶ 40-43 (citing Minn. Stat. § 13.384).] The Minnesota Government Data Practices Act (MGDPA) "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities." Minn. Stat. § 13.01 subd. 3. For hospitals operated by a

4

government entity, the MGDPA imposes certain requirements for the handling of medical data, including that such information be kept private. Minn. Stat. § 13.384.However, the MGDPA does not apply to private nonprofit corporations like the Defendants. *See* Minn. Stat § 13.02, subd. 7a (defining "government entity" to which MGDPA applies as a "state agency, statewide system, or political subdivision"); *see also Minn. Joint Underwriting Ass'n v. Star Tribune Media Co.*, 862 N.W.2d 62, 65 (Minn. 2015) (concluding that underwriting association composed of private insurers was not subject to the requirements of the MGDPA as it was not a political subdivision, statewide system, or state agency). Defendants have identified publicly available records in the Minnesota Secretary of State's business filings records demonstrating that HealthPartners, Regions Hospital, and Park Nicollet Clinic are not operated by a state agency or political subdivision that would make them susceptible to any MGDPA claim. [Defs.' Mem. at 18 n.6 (providing links to the Secretary's business filings website for Defendants showing that each is a private nonprofit corporation).] There is no basis in the record to conclude that any of the Defendants qualify as a political subdivision, statewide system, or state agency. Ms. Lee has provided no evidence creating a genuine dispute on this issue, and Defendants are entitled to summary judgment on her MGDPA claim.

### C. Minnesota Health Records Act Claim

Ms. Lee alleges that Defendants released her medical information to a psychologist at another clinic in violation of the Minnesota Health Records Act. In particular, she asserts that she did not consent to Regions Hospital sharing information with a psychologist at Park Nicollet Clinic. [Am. Compl. ¶ 19, 44-46.] The Minnesota Health Records Act regulates the release of patient health records. *See* Minn. Stat. § 144.293, subd. 1. The act allows a patient's records to be released to other medical providers when it is "necessary for the current treatment of the patient." *Id.*, § 144.293, subd. 5(2). Defendants have presented evidence showing that after Ms. Lee was told she could remain at Regions Hospital overnight but eventually provided discharge papers after being disruptive, she asked to use a telephone and called a Care Line for Park Nicollet. [Nearing Aff., Ex. C.] A nurse in Regions emergency department spoke with a psychologist on call at Park Nicollet and explained that Ms. Lee had been seen, assessed, and discharged, but had become disruptive. [*Id.*] This evidence shows that the communication with the Park Nicollet psychologist was necessary for current treatment, and Ms. Lee has presented no

5

admissible evidence to contradict that showing. As a result, Defendants are entitled to summary judgment on Ms. Lee's Minnesota Health Records Act claim.

### D.     Patient Bill of Rights Claim

Ms. Lee alleges that Defendants violated one or more of the rights set forth in the "Patient Bills of Rights" established under federal and Minnesota Law. For example, she states that Defendants: failed to respond to her complaints about how she was treated during the October 6, 2013 visit to the emergency room; prevented her from contacting her own doctor to receive appropriate care; retaliated against her for complaints she made; and did not respect her privacy. [Am. Compl. ¶¶ 47-49.] Hospitals participating in Medicaid and Medicare must adhere to a number of standards established by the United States Department of Health and Human Services, including "protect[ing] and promot[ing] each patient's rights," which include, among other things: informing each patient of their rights; establishing a procedure for resolving patient grievances; allow a patient to participate in development of a plan of care; protect the patient's privacy; and keeping patient records confidential. 42 C.F.R. § 482.13. Minnesota's health care bill of rights sets similar standards for promoting the interests of patients at health care facilities. *See* Minn. Stat. § 144.651.

However, as Defendants correctly point out, Ms. Lee's "patient bill of rights" claims fail as a matter of law. Neither the federal regulation nor state statute creates a private cause of action. *Stewart v. Bernstein*, 769 F.2d 1088, 1092 n.6 (5th Cir. 1985) ("[T]hese regulatory rights are enforceable by means other than a civil suit . . . . [T]he federal regulations cannot themselves create a cause of action; this is a job for the legislature."); *Smith v. University of Minn. Medical Center-Fareview Riverside*, *Favors v. Kneisel*, 902 N.W.2d 92, 96 (Minn. Ct. App. 2017) (holding that there is no private cause of action under the Minnesota Patients' Bill of Rights). Accordingly, the Court concludes that Defendants are entitled to summary judgment on the claims in Count IV of the Amended Complaint.

### E.     Intentional Infliction of Emotional Distress Claim

Finally, Ms. Lee asserts that her treatment at Regions Hospital on October 6, 2013 supports a claim for intentional infliction of emotional distress. To support this claim, she alleges that Regions: refused to treat her appropriately and did so "in bad faith"; fabricated medical records to "cover up . . . illegal actions"; violated its own hospital protocol; refused to allow her to use a telephone; made sarcastic and

unnecessary remarks to her; and declined to treat her because she lived in Hennepin County. [Am. Compl. ¶¶ 50-53.] To prove a common law claim of intentional infliction of emotional distress, the claimant must show, *inter alia,* that the defendant's conduct was extreme and outrageous. *Lund v. Chicago & Northwestern Transp. Co.*, 467 N.W.2d 366, 370 (Minn. Ct. App. 1991). The conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* (quoting *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652-53 n.3 (Minn. 1979)). Based on the evidence submitted by Defendants concerning the events at Regions Hospital on October 6, 2013, none of the complained-of conduct that could potentially be attributable to any of the Defendants rises to the level of extreme and outrageous behavior that could sustain an IIED claim. As a result, no reasonable jury could find in Ms. Lee's favor on this claim and the Defendants are entitled to summary judgment.

## RECOMMENDATION

For these reasons, the Court makes the following recommendation:

1. Defendants' Motion for Summary Judgment **[ECF No. 30]** should be **GRANTED**.

2. This action should be **DISMISSED WITH PREJUDICE**.

Date: February 12, 2018              *s/Katherine Menendez*
                                     Katherine Menendez
                                     United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the

objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.